1 RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General
2

JEREMY N. HENDON (ORBN 982490)
3 Trial Attorney, Tax Division
U.S. Department of Justice
4 P.O. Box 683, Ben Franklin Station
Washington, D.C.  20044
5 Phone: (202) 353-2466
Fax: (202) 307-0054
6 Jeremy.Hendon@usdoj.gov

*Attorneys for Plaintiff*
7

8
IN THE UNITED STATES DISTRICT COURT
9 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 UNITED STATES OF AMERICA,                    )
                                              )  Case No.
12             Plaintiff,                      )
                                              )  **COMPLAINT TO REDUCE CIVIL**
13      v.                                     )  **PENALTY ASSESSMENTS TO**
                                              )  **JUDGMENT**
14 SUSAN BARLAND as the Personal              )
   Representative of the ESTATE OF             )
15 SIGURD ANDERSON,                           )
                                              )
16             Defendant.                      )
   _____)
17

18      Plaintiff, the United States of America ("United States"), brings this action to collect

19 unpaid federal civil penalty assessments and interest as provided by law and to reduce those

20 assessments to judgment. Additionally, the United States intends to use all appropriate pre-

21 judgment remedies, post-judgment remedies, and additional surcharges as authorized by the

22 Federal Debt Collection Practices Act (28 U.S.C. § 3001 et seq.) to collect any judgment it

23 obtains in this case. In support of this action, the United States alleges as follows:

24

25                                        1
   COMPLAINT TO REDUCE CIVIL PENALTY
   ASSESSMENTS TO JUDGMENT

**INTRODUCTION**

1.     This is a timely civil action brought by the United States to collect the outstanding

unpaid civil penalty assessments (31 U.S.C. § 5321(a)(5)), commonly known as FBAR penalties,

made against the decedent Sigurd Anderson. The Internal Revenue Service ("IRS") assessed

FBAR penalties against Sigurd Anderson, prior to his death,for his failure to report his interest in

a foreign bank account, as required by 31 U.S.C. § 5314 and the implementing regulations

promulgated thereunder.

2.      The United States brings this action with the authorization of the Secretary of the

Treasury (see 31 U.S.C. § 3711(g)(4)(C)) and at the direction of the Attorney General of the

United States.

**DEFENDANT**

3.     Decedent Sigurd Anderson ("Mr. Anderson") was a United States citizen who, up

until his death, resided in Humboldt County, California. Mr. Anderson lived in Humboldt

County during the time periods relevant to the civil penalties at issue.

4.     Mr. Anderson died in November, 2019.

5.     The personal representative of Mr. Anderson's estate is Susan Barland ("Ms.

Barland").

**JURISDICTION AND VENUE**

6.     Jurisdiction over this action is conferred upon this district court by 28 U.S.C.

§§ 1331, 1345 and 1355.

7.     Venue properly lies in the Northern District of California under

28 U.S.C. § 1391(b)(1) because Mr. Anderson resided within this judicial district.  Further,

venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or

omissions giving rise to the claim occurred in this judicial district.

COMPLAINT TO REDUCE CIVIL PENALTY
ASSESSMENTS TO JUDGMENT

## **REQUIREMENT TO FILE FBARS**

8.      31 U.S.C. § 5314 authorizes the Secretary of the Treasury to require United States persons to report certain transactions with foreign financial agencies. Under the statute's implementing regulations, "[e]ach United States person having a financial interest in, or signature authority over, a bank, securities, or other financial account in a foreign country shall report such relationship to the [IRS] for each year in which such relationship exists." 31 C.F.R. § 1010.350(a).

9.      To fulfill the requirement of 31 U.S.C § 5314 during calendar years 2010–2012, a person was required to file a Form TD F 90-22.1, "Report of Foreign Bank and Financial Accounts," commonly known as an "FBAR." For these calendar years, the FBAR report was due by June 30 following the calendar year reported for all foreign financial accounts exceeding $10,000.  31 C.F.R. § 1010.306(c).

10.      To fulfill the requirement of 31 U.S.C § 5314 during calendar years 2013–2014, a person was required to file a FinCEN Form 114. For these calendar years, a FinCEN Form 114, also commonly known as an "FBAR," was due by June 30 following the calendar year reported for all foreign financial accounts exceeding $10,000.  31 C.F.R. § 1010.306(c).

11.      31 U.S.C. § 5321(a)(5) provides for the imposition of civil penalties for failure to comply with the reporting requirements of 31 U.S.C. § 5314.

12.      Mr. Anderson had a financial interest in a foreign bank account, account number ending in -266.S1, at UBS AG (the "UBS account") during at least years 2010 through 2014.

13.      For each of the years 2010 through 2014, the amount in the UBS account exceeded $10,000 in U.S. currency at all times.

14.      Mr. Anderson was required by law to timely file FBARs reporting his financial interest in the UBS account for the years 2010 through 2014.

COMPLAINT TO REDUCE CIVIL PENALTY
ASSESSMENTS TO JUDGMENT

15.     Mr. Anderson did not timely file FBARs that disclosed the UBS account for the years 2010 through 2014.

## WILLFUL FAILURE TO FILE FBARS

### Mr. Anderson's efforts to conceal his assets from the IRS.

16.     During the early 1980s, Mr. Anderson was involved in a marijuana farming business.

17.     In or around 1985, Mr. Anderson ceased farming marijuana.  Around the same time, Mr. Anderson travelled with his accountant Roland Potter ("Mr. Potter") to Switzerland.

18.     The purpose of Mr. Anderson's trip to Switzerland was to open a bank account at UBS AG and to deposit the proceeds of his marijuana farming business into that newly opened account.

19.     Mr. Anderson opened the UBS account because he believed it was, in his words, "safe", "secure", and "secret."

20.     By the end of 1985, over the course of three trips to Switzerland, Mr. Anderson deposited roughly $530,000 in cash into the UBS account.

21.     In or around 1993, Mr. Anderson returned to Switzerland and deposited roughly an additional $70,000 in cash into the UBS account.

22.     Despite operating his marijuana farming business in the United States, Mr. Anderson failed to report any of the roughly $600,000 he deposited into the UBS account on his United States federal income tax returns.

23.     To keep the funds in the UBS account "safe", Mr. Anderson paid a special fee to UBS AG.  By paying this fee, UBS AG agreed not to communicate with Mr. Anderson in the United States in any way. Instead of mailing statements and other information to Mr. Anderson

4

COMPLAINT TO REDUCE CIVIL PENALTY
ASSESSMENTS TO JUDGMENT

in the United States, UBS AG held all correspondences in a folder in Switzerland for safe keeping.

24. In or around July 2000, UBS AG sent Mr. Anderson a Declaration for US Taxable Persons. The Declaration informed Mr. Anderson that going forward, investment in US securities would require UBS AG to disclose his account to the IRS. Rather than reveal the existence of his account, Mr. Anderson chose to freeze his account for all new investment in US securities.

25. In choosing to freeze his account, Mr. Anderson signed his name directly above a declaration stating that, "*I would like to avoid disclosure of my identity to the US Internal Revenue Service under the new tax regulations*" (emphasis added).

**Mr. Anderson's knowledge of FBAR reporting requirements and failure to comply with the IRS Examination**

26. From at least 2008 onward, Mr. Anderson was aware of the Offshore Voluntary Disclosure Program from reading the news and from speaking with Edward Ord and Mr. Potter, his attorney and accountant at the time.

27. In or around 2008, Mr. Potter informed Mr. Anderson that filing a federal income tax return required that individuals disclose foreign bank accounts to the IRS. For this reason, Mr. Potter recommend that Mr. Anderson not to file a return because doing so would force him to either (1) lie on the return or (2) disclose his UBS account and possibly become subject to an audit by the IRS.

28. From his conversation with Mr. Potter, Mr. Anderson knew he was required to disclose the existence of his UBS account to the United States.

COMPLAINT TO REDUCE CIVIL PENALTY
ASSESSMENTS TO JUDGMENT

29.     In or around March 2009, Mr. Anderson received a letter from UBS AG announcing that it was no longer providing cross-border services to U.S. private clients and that it was therefore terminating Mr. Anderson's account. Among other things, the letter:

- informed Mr. Anderson of the IRS's voluntary disclosure program;

- warned Mr. Anderson of the consequences of not pursuing voluntary disclosure;

- asked Mr. Anderson to instruct UBS AG to provide Mr. Anderson's account information to the IRS in response to the IRS' s John Doe summons demanding records of UBS AG's United States taxpayer clients; and

- recommended that Mr. Anderson seek advice to determine if he had any U.S. tax return filing or disclosure obligations with respect to his UBS account.

30.     In or around October 2009, Mr. Anderson received another letter from UBS AG this time notifying Mr. Anderson that his UBS account was within the scope of a treaty request submitted by the IRS.

31.     Rather than disclose his account information to the IRS, Mr. Anderson retained a series of Swiss attorneys to try to prevent UBS AG from revealing the existence of his UBS account.

32.     Ultimately, in or around June 2010, UBS AG disclosed Mr. Anderson's account information to the IRS.

33.     In or around August 2012, the IRS opened an income tax examination into Mr. Anderson's 2010 tax year, which was expanded to include tax years and FBARs for 2008 through 2010.

34.     The IRS issued a summons to Mr. Anderson in or around December 2013. Mr. Anderson failed to comply with the summons, and the IRS petitioned a district court to enforce the summons. *United States v. Anderson*, No. 14-cv-01932-JST, 2014 WL 6682534 (N.D. Cal.

COMPLAINT TO REDUCE CIVIL PENALTY
ASSESSMENTS TO JUDGMENT

Nov. 25, 2014). The district court enforced the summons in November 2014. Mr. Anderson

appealed the district court's decision to the U.S. Court of Appeals for the Ninth Circuit and was

held in contempt by the district court, *Anderson*, 14-cv-01932-JST, 2016 WL 1169309 (N.D.

Cal. March 25, 2016), before the IRS was finally able to obtain records of Mr. Anderson's UBS

account for  tax years after 2008..

35.     The IRS issued a second summons to Mr. Anderson in or around June 2015, and

Mr. Anderson again failed to fully comply. The Department of Justice petitioned the district

court to enforce this summons, and it was not until Mr. Anderson faced contempt sanctions in the

earlier summons enforcement case that he finally provided records to the IRS.

## CLAIM FOR RELIEF: JUDGMENT FOR CIVIL PENALTIES UNDER 31 U.S.C. § 5321(A)(5)

### Liability for civil penalties

36.     During the calendar years 2010 through 2014, Mr. Anderson was a United States

person within the meaning of 31 C.F.R. § 1010.350(b).

37.     During the calendar years 2010 through 2014, Mr. Anderson had a financial

interest, within the meaning of 31 C.F.R. § 1010.350(e), over the UBS account in Switzerland.

38.     The UBS account was a bank account in a foreign country.

39.     During the calendar years 2010 through 2014, the balance in the UBS account

exceeded $10,000.

40.     Mr. Anderson failed to report his interest in the UBS account by filing an FBAR

with respect to the 2010 through 2014 calendar years, as required by 31 U.S.C. § 5314 and 31

C.F.R. § 1010.306(c).

41.     Mr. Anderson's failure to timely file an FBAR with respect to the 2010 through

2014 calendar years was willful within the meaning of 31 U.S.C. § 5321(a)(5).

7

**Assessment of the civil penalties**

42.    On or about May 1, 2018, a delegate of the Secretary of the Treasury timely assessed civil penalties against Mr. Anderson in the total amount of $588,945 due to his willful failure to timely file FBARs and disclose the UBS AG account to the IRS for the calendar years 2010 through 2014 ("FBAR Penalties").  The FBAR penalties were broken down by year as follows:

| Year | FBAR Penalty |
| --- | --- |
| 2010 | $118,095 |
| 2011 | $117,712 |
| 2012 | $117,714 |
| 2013 | $117,718 |
| 2014 | $117,704 |
| **Total Penalty** | **$588,946** |

*Table 1: FBAR penalties assessed for the 2010–2014 calendar years*

43.    On or about June 22, 2018, a delegate of the Secretary of Treasury sent a notice of the assessments and demand for payment to Mr. Anderson for the FBAR Penalties at his last known address.

44.    In addition to the FBAR Penalties, Mr. Anderson's estate owes late-payment penalties pursuant to 31 U.S.C. § 3717(e)(2), and interest pursuant to 31 U.S.C. § 3717(a), and applicable collection related fees pursuant to 31 U.S.C. § 3717(e)(1).

45.    As of January 31, 2020, the unpaid balance owed to the United States by Mr. Anderson's estate for the FBAR penalties, the late payment penalty, applicable fees and interest, less any payments, was $661,233.07.

46.    The United States is entitled to a judgment against Susan Barland, as personal representative of the Estate of Sigurd Anderson in the amount of $661,233.07 as of January 31, 2020, plus statutory accruals as provided by law from that date until fully paid.

WHEREFORE, the United States requests that the Court:

COMPLAINT TO REDUCE CIVIL PENALTY
ASSESSMENTS TO JUDGMENT

A.    Enter judgment in favor of the United States of America and against Susan

Barland, as personal representative of the Estate of Sigurd Anderson, in the amount of

$661,233.07 as of January 31, 2020, plus statutory accruals from that date until fully paid; and

B.    Award the United States of America its costs, and such other further relief as the

Court deems just and proper.

Dated:  April 27, 2020                    Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General


*/s/ Jeremy N. Hendon*
JEREMY N. HENDON (ORBN 982490)
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 353-2466
Fax: (202) 307-0054
Jeremy.Hendon@usdoj.gov

9

COMPLAINT TO REDUCE CIVIL PENALTY
ASSESSMENTS TO JUDGMENT